**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Shenzhen Lanxi Technology Co. Ltd., <br><br> *Plaintiff*, <br><br> v. <br><br> Pingjiang Fangao E-commerce Co., Ltd, <br><br> *Defendant*. | **CASE NO.** 23-cv-03001 <br><br> **Judge**: Honorable Sharon Johnson Coleman <br><br> **Magistrate Judge**: Honorable Sunil R. Harjani |

i

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

    A. WALMART INTELLECTUAL PROPERTY PROTECTION LOOPHOLE ........................................ 1

    B. THE PLAINTIFF ............................................................................................. 2

    C. THE DEFENDANT AND ITS PATENT INFRINGEMENT COMPLAINT ........................................ 3

    D. THE ASSERTED PATENT ............................................................................. 3

II. LEGAL STANDARD ................................................................................... 3

III. ARGUMENT .............................................................................................. 4

    A. PLAINTIFF HAS AN OVERWHELMING LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS
        CLAIM .............................................................................................. 4

      1. The '246 Patent is invalid pursuant to the 35 U.S.C. § 102(a)(1). ........................... 5

      2. The Plaintiff's Markup Organizer is substantially different from the '246 Patent. ... 6

    B. PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT A TRO RELIEF ........................... 7

    C. INADEQUACY OF LEGAL REMEDIES ..................................................................... 9

    D. THE BALANCING OF HARMS TIPS IN PLAINTIFF'S FAVOR .................................... 10

    E. PUBLIC INTEREST IS SERVED BY ENTRY OF THE INJUNCTION. ........................... 11

IV. THE EQUITABLE RELIEF PLAINTIFF SOUGHT IS APPROPRIATE ....................... 12

    A. AN TRO DIRECTING DEFENDANT TO RETRACT THE WALMART PATENT INFRINGEMENT
        COMPLAINT AND REFRAIN FROM FILING NEW COMPLAINT IS APPROPRIATE ... 12

    B. NO BOND SHOULD BE REQUIRED BECAUSE DEFENDANT'S OWN NO VALID PATENT FOR
        PLAINTIFF TO INFRINGE .................................................................... 13

V. CONCLUSION ............................................................................................. 13

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR**
***EX PARTE* TEMPORARY RESTRAINING ORDER**

Plaintiff Shenzhen Lanxi Technology Co. Ltd ("Plaintiff"), respectfully moves the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for an *Ex Parte* temporary restraining order against Defendant Pingjiang Fangao E-commerce Co., Ltd ("Defendant").

## I.    INTRODUCTION

In this case, Defendant who is using loopholes in Walmart's intellectual property enforcement procedures to harm the legitimate business operations of the Plaintiff, who relies on Walmart as a vital platform to reach consumers. The Defendant's actions have caused irreparable harm to the Plaintiff's business, and there is an imminent threat that the Plaintiff's Walmart selling accounts could be deactivated at any time. Given the severity of these consequences, the Plaintiff is seeking immediate *ex parte* TRO relief from the Court. As one of the world's largest online retailer, Walmart plays a crucial role in facilitating small business operations, making it important to address the Defendant's exploitative behavior.

### A.  Walmart Intellectual Property Protection Loophole

Walmart has implemented a system to protect the intellectual property rights of owners, which serves a good purpose. Under this system, a rights owner can file a complaint against an infringer on Walmart, alleging that the infringer has violated the rights owner's trademark, patent, and/or copyright. Walmart then evaluates the evidence provided by the rights owner, and if infringement is confirmed, a Walmart employee will delist the infringer's products and revoke their selling privileges.

However, this system is not functioning as intended. Walmart's employees are not required to review evidence in the same manner as the judicial system, yet they hold significant power to

1

freeze assets, delist products, and even close entire stores - much like a court. For example, when a patent owner files a complaint against a competitor for alleged patent infringement, Walmart may not take the time to assess whether the patent was acquired through fraudulent means, or the patent is invalid or not. Instead, when a valid patent certificate is presented to Walmart, the employee may automatically assume the complaint is valid and take action to support the patent owner's claim, leading to the shutdown of the respondent's store. *See* Declaration of Yanhong Jiang, at ¶6 ("Jiang Decl.").

This practice creates a significant loophole that is being exploited by unscrupulous individuals like the Defendant. Defendant failed to provide the relevant prior arts when filing the application to the USPTO to obtain the patent. As a result, individuals or entities such as the Defendant have started a shady business by using Walmart's intellectual property protection system as a tool to harm legitimate sellers like the Plaintiff, steal the seller's market, and eliminate fair competition. Jiang Decl. at ¶11.

Many sellers, in order to maintain their sales rank during peak season, will pay the requested amount to resolve the issue. This practice allows malicious competitors to abuse Walmart's intellectual property protection system and harm legitimate sellers.

But not for the Plaintiff in this case. Plaintiff in this case has taken action to stop this vicious and harmful activity.

## B. The Plaintiff

Plaintiff owns and operates a Walmart store named "LANXI LLC". Plaintiff sells small electronic-related devices and Makeup Organizer in its Walmart stores. Jiang Decl. at¶4. Plaintiff's Makeup Organizer is popular and well recognized due to its distinguished design of the diamond-shaped contour. *Id*. at¶7. The appearance of Plaintiff's product may be seen in Complaint.

2

### C. The Defendant and Its Patent Infringement Complaint

Defendant is a Chinese Company. However, Defendant provided the unknown and invalid physical address when it registered in China. *See* Dkt. No. 7.

On April 26, 2023, Plaintiff's store received an Email from Walmart. *See* Dkt. No. ¶ 13; Dkt. No. 1-1. This Email informed the Plaintiff that Defendant "has made a design patent claim to Walmart alleging that certain product(s) infringe rights and/or registrations owned by them." *Id*. Walmart provided Plaintiff with the contact details of the rights owner, who was identified as Yan Peng, py21652020@outlook.com. *Id*. As a result of the complaint filed by the Defendant, Plaintiff' Makeup Organizer was taken down by Walmart. *Id*.

### D. The Asserted Patent

Defendant's Asserted Patent is the U.S. Patent, No. D935,246 ("'246 Patent"). The '246 Patent was filed on April 14, 2021. *See* Dkt. No. ¶ 14; Dkt. No. 1-2. The '246 Patent was issued on November 9, 2021. *Id*. However, the '246 Patent is invalid pursuant to the 35 U.S.C. § 102(a)(1).

## II.   LEGAL STANDARD

The legal standard employed for a temporary restraining order is the same as one for a preliminary injunction. *Mays v. Dart,* 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020) (citations omitted). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Illinois Dept. of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (internal quotation marks and citation omitted) (emphasis in original). To succeed, the movant must demonstrate (i) a likelihood of success on the merits, (ii) that it has no adequate remedy at law, and (iii) that it will suffer irreparable harm if the relief is not granted. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (internal citations omitted).

If the moving party meets this three-element threshold showing, the court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Planned Parenthood, of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992)).

The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that balance would need to weigh in its favor." *GEFT Outdoors*, 992 F.3d at 364 (citing *Planned Parenthood*, 896 F.3d at 816). Finally, the court must consider the interests of non-parties in granting or denying the requested relief. *Ty, Inc., v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

## III. ARGUMENT

### A. Plaintiff Has an Overwhelming Likelihood of Success on the Merits of Its Claim

Determining whether the movant has a likelihood of success on the merits is simply a "threshold" issue, and it only requires that the movant have a "better than negligible" chance of prevailing. *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016). Although the movant typically bears the burden of establishing its better than negligible chances, "the burdens at the preliminary injunction stage track the burdens at trial" on merits questions. *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014).

1. **The '246 Patent is invalid pursuant to the 35 U.S.C. § 102(a)(1).**

A patent claim is invalid as anticipated if "the invention was…in public use, on sale, or otherwise available to the public" more than one year before "the effective filing date of a claimed invention." 35 U.S.C. § 102(a)(1). To establish anticipation, there must be evidence that a person of ordinary skill in the art would recognize the presence of "each and every claim limitation in a single prior art reference, either explicitly or inherently." *Sunoco P'ship Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 436 F. Supp. 3d 1099, 1110 (N.D. Ill. 2020); *see also, Design Ideas, Ltd. v. Target Corp.*, 2021 WL 6058698 at *2 (C.D. Ill. Dec. 21, 2021) (internal citations omitted) ("A design patent is "anticipated," that is, invalid because it is not new, if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design is substantially identical to a prior design that was commercially available more than a year before the later patent's filing date.").

First, the '246 Patent is independently anticipated by the Patent No. CN 303516094 ("'094 Patent"), and Patent No. CN 304610684 ("'684 Patent"). The '094 Patent was issued on December 23, 2015. The '684 Patent was issued on May 4, 2018. *See* Dkt. No. 1, ¶¶ 16-17. The '246 Patent's filing date is April 14, 2021. *See* Dkt. No. ¶ 14; Dkt. No. 1-2. Therefore, the '094 Patent and '684 Patent are valid prior art to the '246 Patent. As shown by the side-by-side comparison in the Exhibit 1, the '094 Patent and '684 Patent independently disclose all the claimed design of the SHELF claimed in the '246 Patent. The '246 Patent is identical to the '094 Patent and '684 Patent, and an ordinary observer would recognize that the design of the '246 Patent is "substantially the same" as that disclosed in the '094 Patent and '684 Patent. Accordingly, the '246 Patent is anticipated by the '094 Patent and '684 Patent and is invalid pursuant to the 35 U.S.C. § 102(a)(1).

Second, the '246 Patent is invalid under the on-sale and public use provision of 35 U.S.C. § 102(a). As shown in the Complaint, the Makeup Organizer was sold on Amazon at least before

the October 24, 2019, which is one year before the '246 Patent's filing date. *See* Dkt. No. 1, ¶18. Also, the Makeup Organizer was available to the public on YouTube in January 2019, which is also one year before the '246 Patent's filing date. *See* Dkt. No. 1, ¶¶19-20. The Makeup Organizers sold on Amazon and published on YouTube all disclosed all the claimed designs of the '246 Patent.

Therefore, the '246 Patent is invalid pursuant to the 35 U.S.C. § 102(a) and Plaintiff is likely to succeed on its invalidity claim of the '246 Patent.

**2. The Plaintiff's Markup Organizer is substantially different from the '246 Patent.**

The sole test for determining whether a design patent has been infringed is the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). Under the "ordinary observer" test, "a court must consider the ornamental features and analyze how they impact the overall design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1343 (Fed. Cir. 2020) (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).

"Where there are many examples of similar prior art designs, …, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess*, 543 F.3d at 678 (citing *Smith v. Whitman Saddle Co*., 148 U.S. 674, (1893)); *see also Wallace v. Ideavillage Prods. Corp*., 640 Fed. Appx. 970, 978 (Fed. Cir, 2016). The Federal Circuit holds that "the ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Lanard Toys Ltd.,* 958 F.3d at 1344 (*quoting Egyptian Goddess*, 543 F.3d at 676).

Here, the '094 Patent and '684 Patent are prior arts to the '246 Patent. As stated above, the '246 Patent is identical to the '094 Patent and '684 Patent and the structure and claimed design

6

of the '246 Patent has already been disclosed in '094 Patent and '684 Patent, as shown in Exhibit

1. Further, the diamond-shaped contour design of Plaintiff's Makeup Organizer is clearly

distinguished with the '246 Patent. Therefore, an ordinary observer who is conversant with the

prior art would find Plaintiff's Makeup Organizer is substantially dissimilar to the '246 Patent.

Therefore, Plaintiff is likely to succeed on its non-infringement claim.

**B. Plaintiff Will Suffer Irreparable Harm Without a TRO Relief**

First, Plaintiff receives 100% of its revenue from sales made through Walmart.com since

its incorporation. Jiang Decl. at ¶4, This relationship is now threatened as a result of Defendant's

fraudulent Patent infringement complaints against Plaintiff, because Walmart not only "constantly

monitors and scores each seller's 'account performance'" including how many infringement

complaints have been filed against the seller, but Walmart also reserves the right to "deactivate

selling accounts without advance warning." *Id*. at ¶6. "Plaintiff is at an imminent risk of being

suspended from selling any products whatsoever through Walmart, all as a result of Defendant's

false patent infringement accusations against Plaintiff" *Id*. A suspension from Walmart, even if

temporary, would be fatal to the Plaintiff's business. *Id*. at ¶4.

The loss of Plaintiff's revenues and the inevitable layoffs that would be triggered by the

loss of business, *Id*. at ¶14, would impose real harms on Plaintiff that could not be simply undone

by a future decision in its favor. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of

Am., Inc*., 549 F.3d 1079, 1090 (7th Cir. 2008) ("[S]imply returning [60% of plaintiffs business

territory] following trial will not account for the incalculable losses [plaintiff] risks in the interim—

namely, the potential loss of property, employees, or its entire business, as well as damage to its

goodwill. These harms are both real and irreparable.").

7

Second, Plaintiff's ability to rectify Defendant's fraudulent Patent accusations is hindered by Walmart's policies, which only accept retractions of intellectual property infringement claims if the rights owner clearly admits to making an error. This would require Defendant, the malicious competitor/patent owner, to communicate with Walmart directly. As a result, Plaintiff is unable to remove the patent infringement complaint that threatens its business relationship with Walmart and its US customers, which is the foundation that Plaintiff's business is built upon. "It is well recognized that the inability of a party to supply its products to customers as a result of a dispute will often result in a loss of goodwill sufficient to establish irreparable harm." *Country Fare LLC v. Lucerne Farms,* No. 11-CV-722 (VLB), 2011 WL 2222315, at \*5 (D. Conn. June 7, 2011). "[g]iven the likely total loss of its business, Plaintiff has established irreparable harm." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 458 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018); *see also Galvin v. N.Y. Racing Ass'n,* 70 F. Supp. 2d 163, 170–71 (E.D.N.Y.), *aff'd sub nom. Galvin v. N.Y. Racing Ass'n, In*c. (NYRA), 166 F.3d 1200 (2d Cir. 1998) (holding that "[i]n order to demonstrate irreparable injury under the business termination standard, the lost business relationship must be one that was vital to the continuation of the business" and that "[t]he total loss of a business clearly constitutes irreparable injury").

Third, the damages suffered by Plaintiff may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected. *Signode Corp. v. Weld-Loc Systems, Inc.*, 700 F.2d 1108, 1111 (7th Cir.1983). The '246 Patent is registered by a Chinese entity, who provided unknown and invalid physical address when it registered in China. It is almost impossible for Plaintiff to enforce the Defendant even if Plaintiff received a final judgment in favor of Plaintiff. As a result, it is unlikely for Plaintiff to be compensated or collect any damages from the Defendant.

Finally, precedent in this district supports the loss of market share and revenue during the pendency of this litigation constitutes irreparable harm. *See. e.g., Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (likelihood of price erosion and loss of market position are evidence of irreparable harm); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (loss of revenue, goodwill, and research and development support constitute irreparable harm); *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated, and is evidence of irreparable harm).

Plaintiff's Makeup Organizer is very popular and well recognized on Walmart. Jiang Decl. at ¶7. However, the active and frequent sales enhance sales rank and sales rank drops precipitously if a product stops generating sales. *Id.*, at ¶8. Even the listings are reinstated now, it is impossible for Plaintiff to regain its previous ranking even after a very long time. *Id.* at ¶9.

### C. Inadequacy of Legal Remedies

Regarding the adequacy of legal remedies, Plaintiff can establish that money damages would not sufficiently compensate it for the loss of its business. "A damages remedy need be 'seriously deficient,' but not 'wholly ineffectual.'" *Girl Scouts*, 549 F.3d at 1095 (quoting *Roland Mach. Co. v. Dresser Inds., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). The U.S. Court of Appeals for the Seventh Circuit has identified several circumstances resulting in an inadequate legal remedy, including "when a damages award may come too late to save the plaintiff's business" because the business "will lack the cash flow necessary to sustain the fixed costs of operating its business" without the injunction. *Id*. Even when the value of a plaintiff's business could be calculated, the Seventh Circuit nonetheless "recognize[s] that a longstanding business often has a vested interest in continuing in that business, not simply in receiving the monetary equivalent of its operation."

9

*Id.* ; *see also Roland Mach*., 749 F.2d at 386 (observing that "the right to continue a business . . .

is not measurable entirely in monetary terms" when the plaintiff would rather run its business than

"live on the income from a damages award" (citation omitted)). If the movant's loss would not

result in the total ruin of its business, it may still defy accurate calculation of damages because of

unquantifiable impairment of the business's capacity. *See, e.g., Girl Scouts*, 549 F.3d at 1095

(finding the plaintiff's damages "virtually impossible to compute" based in part on "the potential

loss of institutional knowledge accompanying the unwanted termination of employees"); *Ty, Inc*,

237 F.3 at 902 ("[I]t is virtually impossible to ascertain the precise economic consequences of

intangible harms, such as damage to reputation and loss of goodwill[.]" (citation omitted).

Plaintiff lacks the resources to maintain its business if it lost its Walmart store listings.

Jiang Decl. at ¶15. The shutdown of a significant portion of Plaintiff's Walmart store would cause

a significant loss of revenue requiring major workforce reductions. *Id*. at ¶14. Being forced to fire

many of its employees would constitute a significant loss. Plaintiff would lose goodwill in the

market as Plaintiff's product is well recognized on Walmart, *Id*. Plaintiff has shown that the

shutdown of its business threatens to cripple or destroy its business rather than simply cost it money.

Money damages would not make Plaintiff whole.

### D. The Balancing of Harms Tips in Plaintiff's Favor

Plaintiff relies heavily on its sales through Walmart.com and even a temporary suspension

of Plaintiff's selling account is fatal to Plaintiff's business. Jiang Decl.at ¶4. Walmart might

deactivates Plaintiff's selling accounts at any time without advance warning. *Id*., at ¶6. A TRO is

necessary to prevent Plaintiff from losing its selling rights on Walmart.

Here, Plaintiff seeks the Court to issue a TRO and order Defendant to withdraw its Walmart

complaints. If the TRO is granted, it would allow Plaintiff to reactive all affected product listings

Walmart has removed. Should the Court ultimately find that the '246 Patent is valid and enforceable, and the '246 Patent is infringed, which Plaintiff believes to be highly unlikely, Defendant may recover damages based on well-established patent infringement damage accounting practices. The damage recovery will account for sales made subsequent to withdrawal of the Walmart report.

### E. Public Interest Is Served by Entry of the Injunction.

The interest in the public is the last factor that the Court must examine. Here, public interest is compelling for several reasons.

First, the public has a strong interest in stopping abusive Walmart patent practices and preserving market competition, especially where, as here, **the validity and enforceability of the patent at issue are exceedingly dubious**. "[T]he public interest is served by such an injunction against the assertion of what at this preliminary stage clearly and convincingly appears to be wrongful and fraudulent claims to a right to a trademark." *Country Fare LLC*, No. 2011 WL 2222315, at *10; cf. *N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 344"[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.").

Second, as court has recognized in other district, "the public interest is in fact benefited by granting a TRO, because absent [Amazon's] polices, designed to avoid [Amazon's] liability for intellectual property infringement, it would be the claimed [trademark] holder who would bear the burden of proving the [trademark] infringement." *Beyond BlondProds. v. Heldman,* 479 F. Supp. 3d 874,888 (C.D. Cal. 2020). "**To withhold a TRO would allow anyone to effectively shut down a competitor's business on [Amazon]** simply by filing the notice that the [competitor's] product allegedly infringes on the complaining party's [trademark]." *Id*.

11

Lastly, given the ubiquity of Walmart shopping to the general public, the public has an interest in a full and fair online marketplace. Here, through Defendant's fraudulent actions and statements, they are unfairly damaging Plaintiff's business. The public would only benefit from having more choice in the market, as opposed to have competition driven out by malicious complaint made by fraudulent Patent holder.

## IV. THE EQUITABLE RELIEF PLAINTIFF SOUGHT IS APPROPRIATE

### A. An TRO Directing Defendant to Retract the Walmart Patent Infringement Complaint and Refrain From Filing New Complaint Is Appropriate

The authority of a court to issue a preliminary injunction under Rule 65 derives from "traditional principles of equity jurisdiction" and is "not altered by [Rule 65]." *Grupo Mexicano de Desarrollo S. A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999).

Plaintiff is seeking a temporary injunction that would require Defendant to immediately retract the Walmart Patent Infringement Complaint. This injunction is necessary to allow Plaintiff to seek reactivation of the product listings that were removed by Walmart and to stop the ongoing harm to Plaintiff, including loss of customers, loss of its ranking and reviews, deactivation of its selling account, destruction of goods, and loss of goodwill. Granting this narrow injunctive relief would strike the right balance in equity and benefit the public interest in general, especially since Walmart does not reactivate removed product listings unless the Rights Owner sends an email to Walmart authorizing reactivation or the Rights Owner submits a retraction.

It is also necessary for the Court to enjoin the Defendant from filing new complaints using the '246 Patent. Without such relief, the Defendant may continue to file repeated complaints using the same patent, causing ongoing harm and suffering to the Plaintiff. This injunctive relief is necessary to prevent future harm and to protect the Plaintiff's rights.

Judges in this Court has made a similar ruling in a previous case (23-cv-00268), where the

12

Plaintiff, an Amazon seller, was extorted by the Defendant. The Defendant filed a copyright infringement complaint against the Plaintiff on Amazon, resulting in the delisting of 4 of the Plaintiff's ASINs. The Defendant then sent emails to the Plaintiff, demanding over 500,000 dollars for the withdrawal of the fraudulent copyright infringement complaint. However, in that case, the copyright that the Defendant used was created in 2020, while the Plaintiff's product was created and manufactured in 2018, two years before the creation of Defendant's copyright.

After reviewing the evidence, Judge Franklin U. Valderrama granted Plaintiff's motion for a temporary restraining order (TRO) that was narrowly tailored to order the Defendant to retract their previously filed copyright infringement complaint and refrain from filing any new complaints. *See* Exhibit 2.

**B. No Bond Should Be Required Because Defendant's Own No Valid Patent for Plaintiff to Infringe**

Here, a TRO requiring that the Defendant immediately retract the Walmart patent infringement complaints will cause no harm to the Defendant. The TRO seeks nothing more than to maintain the status quo where both Plaintiff and Defendant can sell on Walmart.com and compete freely. It prevents the Defendant from profiting from a fraudulent patent infringement complaint. For reasons stated above, Defendant will suffer no damage from the TRO since it has no valid patent for Plaintiff to infringe. Therefore, there is no reason why a bond needs to be posted. However, if the Court deems it necessary, Plaintiff is willing to post bond.

## V. CONCLUSION

Based on the forgoing reasons, Plaintiff has a strong likelihood of prevailing on its claims and would suffer irreparable harm in lost profits, customers, employees, reputation, and goodwill should the requested interim relief be denied. In contrast, the Defendant will not be harmed by the issuance of the requested temporary restraining order, and this relief will serve the public interest

by preventing Defendant from abusing the Walmart IP dispute resolution mechanism through a fraudulently patent infringement complaint. Therefore, an *ex parte* Temporary Restraining Order is necessary and appropriate. Plaintiff respectfully requests that this Court grant the TRO Application in its entirety. If the Court deems necessary, Plaintiff is willing to post bond.

Date: May 15, 2023                      /s/ Wei Wang

Wei Wang, Esq.
GLACIER LAW LLP
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601
wei.wang@glacier.law
332-777-7315
***Attorney for Plaintiff***

14